**NEW YORK**
**Retail Installment Contract - Simple Interest**

Chrysler Financial

## Parties

Contract Date: 09/30/2008 Account #: [redacted] Buyer: MARC D. PRIORE

Creditor/Seller: MID-CITY ACQUISITION LLC D/B/A TRANSITOWNE DOD Co-Buyer: DEBORAH A. PRIORE

Address: 3160 TRANSIT RD
WEST SENECA, NY 14224
N/A

Billing Address: 38 VERMONT PL
WEST SENECA, NY 14224-4449 ERIE
N/A

Unless otherwise specified, ***"you"*** and ***"your"*** refer to the Buyer (and Co-Buyer), and ***"we"*** and ***"us"*** refer to the Creditor/Seller, listed above in section labeled Parties. The vehicle described below, in the section labeled Vehicle and Trade-in Information, is referred to as ***"vehicle."*** After being quoted both a cash ("Cash Price", page 2) and credit price ("Total Sale Price", below) for the vehicle, you have chosen to buy the vehicle on credit. You agree to the terms and conditions on all pages of this contract. You also acknowledge delivery and acceptance of the vehicle.

## Type of Retail Installment Contract

Standard

You understand that this contract is not a lease. If Fixed Value is the contract type shown and you exercise your option to transfer the vehicle to us as provided in section 14 of this contract, the vehicle turn-in deduction and excess mileage deduction as described in section 14 are as follows: (1) the vehicle turn-in deduction is $ 0.00 ; and (2) for any miles that the vehicle is driven in excess of 0 miles per year, the excess mileage deduction is $ 0.00 per mile. The vehicle's current odometer reading is 11 .

## Federal Truth-in-Lending Disclosures

| **ANNUAL PERCENTAGE RATE** The cost of your credit as a yearly rate. | **FINANCE CHARGE E*** The dollar amount the credit will cost you. | **Amount Financed** The amount of credit provided to you or on your behalf. | **Total of Payments E*** The amount you will have paid after you have made all payments as scheduled. | **Total Sale Price E*** The total cost of your purchase on credit, including your downpayment of: $ 14700.00 |
|---|---|---|---|---|
| 3.90 % | $ 2192.19 | $ 21436.41 | $ 23628.60 | $ 38328.60 |

**Payment Schedule** - Your payment schedule will be: **** E means Estimate***

| **Number of Payments** | **Amount of Each Payment** | **When Payments Are Due** |
|---|---|---|
| | | Monthly |
| | | (Beginning Date of Payment) |
| 59 | $ 393.81 | 10/30/2008 |
| 0 | $ 0.00 | N/A |
| 0 | $ 0.00 | N/A |
| **+ 1 Final Payment** | **Amount of Final Payment** | **Due Date of Final Payment** |
| | $ 393.81 | 09/30/2013 |

***Late Charge.*** You must pay a late charge on each payment made more than **10** days late. The charge is **5%** of the unpaid amount.

***Prepayment.*** If you pay off early, you will not have to pay a penalty.

***Security Interest.*** You are giving us a security interest in the vehicle being purchased.

***Additional Information.*** See the other pages of this contract for additional information about security interest, nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

## Vehicle and Trade-in Information

**1. VEHICLE DESCRIPTION:** New

VIN: 2A8HR54P28R804291

| 2008 | CHRYSLER | TOWN & COUNTRY |
|---|---|---|
| *Year* | *Make* | *Model* |

**2. PRIMARY INTENDED USE:** Personal

If the Primary Intended Use is Personal, you agree to use the vehicle for personal, family, or household purposes.

**3. TRADE-IN DESCRIPTION:**

| 2003 | FORD | ESCAPE |
|---|---|---|
| *Year* | *Make* | *Model* |

© 2006 and 2007 DaimlerChrysler Financial Services Americas LLC. All rights reserved.
EF-291-5289 NY (09/07)

## Financing

**4. ITEMIZATION OF AMOUNT FINANCED**

**a. Cash Price**

(i) Vehicle (including accessories, delivery, installation charges, if any) .......... $ 33899.00

(ii) Sales Tax .......... $ 2134.91

(iii) Service Contract (optional) .......... $ 0.00

(iv) Waste Tire Recycling Fee .......... $ 12.50

(v) Documentation Fee .......... $ 45.00

(vi) Cash Price .......... $ 36091.41

**b. Downpayment**

(i) Cash Downpayment .......... $ 200.00

(ii) Manufacturer's Rebate .......... $ 5000.00

(iii) Gross Allowance on Trade-in .......... $ 9500.00

(iv) Pay-off on Trade-in $ 0.00

(v) Net Allowance on Trade-in .......... $ 9500.00

(vi) Downpayment .......... $ 14700.00

If less than $0, disclose on Line c(i) and enter $0 for the Downpayment.

**c. Unpaid Balance of Cash Price** .......... $ 21391.41

(i) Unpaid Trade-in Lien Amount to be Financed .... $ 0.00

Paid to: N/A

**d. Other Charges Including Amounts Paid to Others on Your Behalf***

(i) Paid to Public Officials for:*

(a) Other Taxes .......... $ 0.00

(b) Filing Fees .......... $ 0.00

(c) License Fees .......... $ 0.00

(d) Certificate of Title Fees .......... $ 0.00

(e) Registration Fees .......... $ 0.00

(ii) Paid to: * DVM

For: Motor Vehicle Inspection Fee $ 10.00

(iii) Paid to: * TRANSITOWNE DCJ

For: Gas $ 35.00

(iv) Paid to: * N/A

For: N/A $ 0.00

(v) Paid to: * N/A

For: N/A $ 0.00

(vi) Paid to: * N/A

For: N/A $ 0.00

(vii) Paid to: *N/A

For: N/A $ 0.00

(viii) Paid to Insurance Companies for:*

(a) Optional Credit Life .......... $ 0.00

(b) Optional Credit Accident & Health .......... $ 0.00

(c) Optional N/A $ 0.00

(d) Optional N/A $ 0.00

(ix) Subtotal .......... $ 45.00

**e. Amount Financed** .......... $ 21436.41

*Seller may be retaining a portion of these amounts.*

## Summary of Insurance and Other Coverages

**5. REQUIRED VEHICLE INSURANCE**

**YOU ARE REQUIRED TO HAVE PHYSICAL DAMAGE INSURANCE. LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT. YOU MAY OBTAIN VEHICLE INSURANCE FROM A PERSON OF YOUR CHOICE.**

**6. OPTIONAL CREDIT INSURANCE AND OTHER OPTIONAL INSURANCE OR COVERAGE**

**CREDIT LIFE, CREDIT DISABILITY, GUARANTEED AUTOMOTIVE PROTECTION COVERAGE AND OTHER OPTIONAL INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT AND WILL NOT BE PROVIDED UNLESS YOU SIGN AND AGREE TO PAY THE PREMIUM.**

**Optional Insurance/Coverage**

Credit life and credit disability insurance end on the original due date of the last payment due under this contract.

The optional insurance you desire is indicated by a check in the applicable box below.

### Credit Life Insurance

☐ Credit Life

Premium: $ 0.00

Insurer: N/A

Insured(s): N/A

Buyer's Signature:

Co-Buyer's Signature:

### Credit Disability Insurance

☐ Credit Disability

Premium: $ 0.00

Insurer: N/A

Insured(s): N/A

Buyer's Signature:

Co-Buyer's Signature:

### Optional Insurance/Coverage

☐ Type: N/A

Premium/Cost: $ 0.00 Term: N/A

Insurer/Provider: N/A

Insured(s)/Beneficiary: N/A

Buyer's Signature:

Co-Buyer's Signature:

### Optional Insurance/Coverage

☐ Type: N/A

Premium/Cost: $ 0.00 Term: N/A

Insurer/Provider: N/A

Insured(s)/Beneficiary: N/A

Buyer's Signature:

Co-Buyer's Signature:

Case 1-11-13548-CLB, Doc 15-1, Filed 11/16/11, Entered 11/16/11 15:08:31, Description: Exhibit A, Page 2 of 8

## *Insurance Verification*

Seller (or Dealer) has verified that the insurance coverage described in Section 11 is in force on the date of this contract.

Insurance Company: STATE FARM
Policy #: 0104915B2452B

Insurance Agent: N/A
Phone #: N/A

Address: N/A

N/A

N/A

## *Payments, Security Interest and Vehicle Treatment*

7. **PAYMENT.** You agree to make all payments when they are due. Accepting a late payment or late charge does not change your payment due date. This is a simple interest contract. **Your final payment may be larger or smaller, depending on whether you make payments late or early.** Your payments will be applied first to the earned and unpaid part of the Finance Charge, then to the unpaid Amount Financed and then to any other amounts due. The Finance Charge is earned by applying the Annual Percentage Rate divided by 365 to the unpaid Amount Financed for the number of days outstanding. You may prepay your debt without penalty. You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, seized, or missing.

8. **LATE CHARGES/RETURNED CHECK FEE.** You will pay a late charge on payments, or parts of payments, which are received by us more than 10 days after the scheduled due date. The late charge is shown on page 1 of this contract. Our acceptance of any late payment or late charge does not change your payment due date or mean that you may keep making payments after they are due. You will pay a fee of $20 if any payment you make is returned or rejected for any reason.

9. **SECURITY INTEREST.** You give us a security interest in the vehicle and any accessories, equipment, and replacement parts put on the vehicle; all insurance policies and service contracts financed in this contract, and any rebates, refunds, or proceeds that relate to those policies or contracts; proceeds of any insurance policies on the vehicle; and all money or goods received for the vehicle. This security interest secures payment of all amounts you owe in this contract. You agree to ensure that our security interest (lien) on the vehicle is shown on the title.

10. **VEHICLE TREATMENT.** You agree: to maintain the vehicle in good condition; not to misuse the vehicle; to keep the vehicle free from the claims of others; and not to break any laws or otherwise expose the vehicle to confiscation. You agree that without our written consent you will not: transfer your equity in the vehicle; sublease or rent the vehicle; or take the vehicle outside the United States for more than 30 days. You agree to notify us of any change of address where the vehicle is kept.

## *Insurance*

11. **REQUIRED PHYSICAL DAMAGE INSURANCE.** You agree to maintain physical damage insurance, acceptable to us, that insures you and us against loss or damage to the vehicle, during the term of this contract. You may obtain coverage from any insurance company you choose. We must approve the type and amount of the insurance. You agree to give us written proof of such insurance coverage. Whether or not the vehicle is insured, you must pay for the vehicle if it is lost, damaged, seized, or destroyed. We may receive and sign your name on any settlement, draft, or check representing payment made by an insurance company for a loss related to the vehicle.

    If you fail to procure or maintain such vehicle insurance, we may procure vehicle insurance that covers our interest only. In such event, you agree to pay a charge consisting of the insurance premium and a Finance Charge thereon at the Annual Percentage Rate shown on page 1 of this contract. You agree to pay the charge in equal installments along with the installments of the unpaid balance then remaining on the contract.

    If the vehicle is stolen, confiscated or damaged beyond repair, you will not be responsible for the "gap amount." The Gap Amount is the difference between the amount that is owing under the contract as of the date of the loss and the sum (a) of any unpaid payments and other unpaid charges owing as of the date of the loss, and (b) the actual cash value of the vehicle as of the date of the loss.

## *Default*

12. **DEFAULT.** You will be in default and we may terminate this contract early if: (a) you have given false or misleading information on your credit application; (b) you do not make a payment when it is due; (c) a lien or other claim is made against this contract or the vehicle; (d) a bankruptcy petition is filed by or against you; (e) the vehicle is seized by any local, state or federal government or authority; (f) you alter or fail to repair or maintain the vehicle as required; (g) you do not maintain the required insurance coverage; (h) you do not comply with any of the contract terms; and/or (i) you breach any promise, representation or warranty you have made in this contract.

    You agree to be liable, to the extent allowed by law, for reasonable attorney fees, not to exceed 15% of the unpaid balance of this contract and court costs incurred by us as a result of your default. Regardless of any language to the contrary, you are only liable for reasonable attorney fees if we hire an attorney who is not one of our salaried employees.

    If you default, we may:

    Require you to pay the unpaid Amount Financed, the earned and unpaid part of the Finance Charge, and all other amounts due; sue you to collect the amount you owe; **without the use of force or other breach of the peace, enter or have anyone we choose enter the premises where the vehicle may be, and lawfully repossess (take back) the vehicle, including equipment and accessories**; take goods found in the vehicle and hold them for you for 30 days, and if you do not claim the goods during that period, we can dispose of them and have no liability to you; and cancel any Credit Life, Credit Disability, Guaranteed Automotive Protection Coverage, Extended Warranty, or other optional insurance/coverage financed under this contract and apply the refunded premium to your outstanding balance.

## *Default (continued)*

**If we repossess the vehicle, and we are not precluded by law, we will send you a notice stating that you may redeem the vehicle and the amount needed to redeem. To redeem the vehicle, you must pay us the net amount owed under the contract plus all collection and legal costs, including reasonable attorney fees as provided above and court costs, to the extent permitted by applicable law. You may redeem the vehicle until we sell it. If you do not redeem the vehicle, we may sell it or otherwise dispose of the vehicle. The net proceeds (the money from the sale, less allowed expenses) will be subtracted from the amount you owe us. The allowed expenses are those expenses, fees, and all legal costs that we are entitled to by law as a result of any lawful activity to obtain possession of, recondition, store and dispose of the vehicle after default. If the amount from the sale of the vehicle is not enough to cover the amount you owe us, you will pay what is still owed plus interest. If, after we apply the net proceeds to what you owe, there is money left, we will pay it to you.**

## *Balloon Payment/Fixed Value*

13. **BALLOON PAYMENT CONTRACT.** The information in this section 13 applies only if this contract is a Balloon Payment contract, as indicated on page 1 of this contract in the Type of Retail Installment Contract section.

You may owe us more or less than the amount of the final payment if you did not make your payments as scheduled.

When the final payment is due (the amount and the due date are shown on page 1) you may either (i) pay us the final payment and any additional amounts that you owe us, in cash, and keep the vehicle; or (ii) pay us any additional amount that you owe us in excess of the final payment and refinance the final payment with us, at the then prevailing rates, terms and conditions, as long as you are not in default or have not received a bankruptcy discharge of your legal obligation to pay. If you choose to refinance the final payment, you agree to give us 30 days written notice before the due date and provide proof of current acceptable vehicle insurance. You must apply the proceeds of the refinance to the final payment.

14. **FIXED VALUE CONTRACT.** The information in this section 14 applies only if this contract is a Fixed Value contract, as indicated on page 1 of this contract in the Type of Retail Installment Contract section.

You may owe us more or less than the amount of the final payment if you did not make your payments as scheduled.

**A.** You have the following options to satisfy your final payment when it is due (the amount and the due date are shown on page 1):
1. Transfer the vehicle to us and pay us any additional amounts due (see C. below);
2. Pay us the final payment and any additional amounts that you owe us, in cash, and keep the vehicle; or
3. Pay us any additional amount that you owe us in excess of the final payment, refinance the final payment with us, and keep the vehicle (see B. below).

**B. Refinance Final Payment.** You may pay us any additional amount that you owe us in excess of the final payment and refinance the final payment with us, at the then prevailing rates, terms and conditions, as long as you are not in default or have not received a bankruptcy discharge of your legal obligation to pay. You agree to give us 30 days written notice before the due date and provide proof of current acceptable vehicle insurance. You must apply the proceeds of the refinance to the final payment.

**C. Transfer the Vehicle To Us.** On the due date of your final payment, you may exercise your option to transfer the vehicle to us and have the amount of the transfer value applied to your final payment. If you exercise your option to transfer the vehicle to us, you must return the vehicle to us along with the title and any other required papers and pay us the difference between the final payment and the transfer value of the vehicle. We will apply transfer value of the vehicle to your final payment and you must pay us the balance on the due date of the final payment. The amount of the transfer value of the vehicle equals the final payment less: (1) any additional amount you owe us in excess of the final payment; (2) a vehicle turn-in deduction in the amount shown on page 1 of this contract; (3) an excess wear and use deduction, if any; and (4) the excess mileage deduction, if any. You agree to give us 30 days written notice before the due date of the final payment to arrange a convenient time and place for us or our agent to inspect the vehicle. We will inspect the vehicle and determine if an excess mileage deduction or an excess wear and use deduction is to be used in calculating the transfer value of the vehicle.

Excess wear and use includes, but is not limited to: (1) damage to the major driveline components (engine, transmission, differential) not covered by warranty; (2) damage to the vehicle's frame; (3) missing or broken parts or accessories, including optional factory equipment; (4) missing tires, tires that are lesser quality than the original tires, tires that are not produced by the same manufacturer, tires of unequal size (diameter), tires that have sidewall plugs, cuts or exposed cords, tires that have less than 1/8 inch tread, or wheels that are broken or cracked; (5) damage to the body, fenders, metalwork, lights, trim, or paint, including but not limited to dents or rust; (6) damaged or stained dash, floor covers, and seats; (7) broken glass, including stars, cracks, holes or plugs in the windshield or other glass; (8) failing to maintain the vehicle according to the manufacturer's specifications; (9) aftermarket alterations not installed by an authorized Chrysler dealer; (10) water damage; (11) damage to the interior or exterior that is beyond ordinary wear and use; and (12) any damage that makes the vehicle unsafe or unlawful.

The amount of the excess wear and use deduction is our estimate of what it will cost to repair the excess wear and use on the vehicle. The excess wear and use deduction will be applied whether or not we make the repairs. If you disagree with our determination of the excess wear and use deduction, you may get an estimate of the excess wear and use from an authorized dealer. If you get an estimate, the amount of the excess wear and use deduction will be the lesser of such estimate or our assessed amount. You understand that the greater the excess wear and use deduction, the more you will have to pay us on the due date of the final payment because the transfer value of the vehicle is reduced by the excess wear and use deduction.

The excess mileage deduction is calculated as provided on page 1 of this contract. You understand that the greater the excess mileage deduction, the more you will have to pay us on the due date of the final payment because the transfer value of the vehicle is reduced by the excess mileage deduction.

You agree to transfer the vehicle to us at Creditor's place of business shown on page 1 of this contract along with the Certificate of Title and any other papers or documents appropriate to transfer title no later than the due date of the final payment. You must also pay us the difference between the final payment and the transfer value of the vehicle.

## *Additional Information*

15. **WARRANTIES. If the vehicle is for personal use and we, or the vehicle's manufacturer, extend a written warranty or, within 90 days from the date of the contract, extend a service contract, you get the implied warranties of merchantability and fitness for a particular purpose covering the vehicle. Otherwise, you agree there are no such implied warranties.**

16. **ASSIGNMENT.** You understand that this contract will be assigned to Assignee. Assignee will acquire all of our interest in this contract and in the vehicle including the right to receive all payments.

17. **GENERAL.** Unless otherwise provided in this contract, any change to this contract must be in writing and signed by all parties. Notice to you is sufficient if mailed to your last address known by us. If the law does not allow a part of this contract, that part will be void. The remaining parts will be enforceable. If there is more than one Buyer, their obligation shall be joint and several. Any delay or omission by us in enforcing our rights shall not act as a waiver. Section headings in this contract are for convenience of reference only and are not part of the contract for any other purpose. We may assign our rights and obligations under this contract to anyone at anytime without first notifying you. **To the extent permitted by law, you give us permission to monitor and record any telephone conversation between you and us.**

18. **DEFERRED PAYMENTS.** Any change to this contract must be in writing and signed by all the parties. However, if permitted by law, extensions, deferrals and due date changes may be agreed to orally by you and us, and we will send you a written confirmation of our agreement. Interest will continue to accrue until the next payment is received. Any deferral would not extend any purchased insurance coverage you have.

19. **POWER OF ATTORNEY.** You appoint us, to the extent permitted by law, through our appointed officer or employee, as your attorney-in-fact. Your grant of this power of attorney is coupled with an interest, and is irrevocable until all obligations you owe under this contract are paid in full. As your attorney-in-fact, we can: sign on your behalf all Certificates of Ownership, Registration Cards, applications, affidavits or any other documents required to register and properly perfect our security interest in the vehicle; transfer your entire interest in the vehicle after a Return of Vehicle (see Paragraph 14.C); act on your behalf in any insurance/coverage matter relating to the vehicle, including, but not limited to, the power to endorse insurance/coverage proceeds checks or drafts on your behalf; and cancel any Credit Life, Credit Disability, Guaranteed Automotive Protection Coverage, Extended Warranty, or other optional insurance/coverage financed under this contract, and apply the refunded premium or cost to your outstanding balance if you are in default.

20. **GOVERNING LAW.** This contract shall be governed by the laws of the State of New York except, if the vehicle is repossessed, then the law of the state where the vehicle is repossessed will govern the repossession. Repossession effected through legal process will be governed by the laws of the state in which such process is brought.

**NOTICE: THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.**

**The preceding NOTICE applies if the vehicle is a used vehicle as shown on page 1 of this contract and if this contract is a contract of sale under the FTC Used Motor Vehicle Trade Regulation Rule.**

## *Important Arbitration Disclosures*

21. **ARBITRATION. The following Arbitration provisions significantly affect your rights in any dispute with us. Please read the following disclosures and the Arbitration provision that follows carefully before you sign the contract.**

    1. If either you or we choose, any dispute between you and us will be decided by arbitration and not in court.
    2. If such dispute is arbitrated, you and we will give up the right to a trial by a court or a jury trial.
    3. You agree to give up any right you may have to bring a class-action lawsuit or class arbitration, or to participate in either as a claimant, and you agree to give up any right you may have to consolidate your arbitration with the arbitration of others.
    4. The information that can be obtained in discovery from each other or from third persons in arbitration is generally more limited than in a lawsuit.
    5. Other rights that you and/or we would have in court may not be available in arbitration.

    Any claim or dispute, whether in contract, tort or otherwise (including any dispute over the interpretation, scope, or validity of this contract, Arbitration section or the arbitrability of any issue), between you and us or any of our employees, parents, subsidiaries, affiliate companies, agents, successors or assignees, which arises out of or relates to a credit application, this contract, or any resulting transaction or relationship arising out of this contract shall, at the election of either you or us, or our employees, parents, subsidiaries, affiliate companies, agents, successors or assignees, be resolved by a neutral, binding arbitration and not by a court action. Any claim or dispute is to be arbitrated on an individual basis and not as a class action. Whoever first demands arbitration may choose to proceed under the applicable rules of the National Center for Dispute Settlement, or its successor, which may be obtained by mail from the National Center for Dispute Settlement, 22500 Metropolitan Pkwy., Suite 200, Clinton Township, MI 48035 or the Internet at http://www.ncdsusa.org/, or the applicable rules of the National Arbitration Forum, or its successor, which may be obtained by mail from The Forum, P.O. Box 50191, Minneapolis, MN 55405-0191, or on the Internet at http://www.arbitration-forum.com.

    Whichever rules are chosen, the arbitrator shall be an attorney or retired judge and shall be selected in accordance with the applicable rules. The arbitrator shall apply the law in deciding the dispute. Unless the rules require otherwise, the arbitration award shall be issued without a written opinion. The arbitration hearing shall be conducted in the federal district in which you reside. If you demand arbitration first, you will pay the claimant's initial arbitration filing fees or case management fees required by the applicable rules up to $125, and we will pay any additional initial filing fee or case management fee. We will pay the whole filing fee or case management fee if we demand arbitration first. We will pay the arbitration costs and fees for the first day of arbitration, up to a maximum of eight hours. The arbitrator shall decide who shall pay any additional costs and fees. Nothing in this paragraph shall prevent you from requesting that the applicable arbitration entity reduce or waive your fees, or that we voluntarily pay an additional share of said fees, based upon your financial circumstances or the nature of your claim.

    This contract evidences a transaction involving interstate commerce. Any arbitration under this contract shall be governed by the Federal Arbitration Act (9 USC 1, *et seq.*). Judgment upon the award rendered may be entered in any court having jurisdiction.

## *Important Arbitration Disclosures (continued)*

Notwithstanding this provision, both you and Creditor and Creditor's employees, parents, subsidiaries, affiliate companies, agents, successors and assignees retain the right to exercise self-help remedies and to seek provisional remedies from a court, pending final determination of the dispute by the arbitrator. Neither you nor we waive the right to arbitrate by exercising self-help remedies, filing suit, or seeking or obtaining provisional remedies from a court.

If any clause within this Arbitration section, other than clause 3 or any similar provision dealing with class action, class arbitration or consolidation, is found to be illegal or unenforceable, that clause will be severed from this Arbitration section, and the remainder of this Arbitration section will be given full force and effect. If any part of clause 3 or any similar provision dealing with class action, class arbitration or consolidation is found to be illegal or unenforceable, then this entire Arbitration section will be severed and the remaining provisions of this contract shall be given full force and effect as if the Arbitration section of this contract had not been included in this contract.

## PRIVACY POLICY
## OF DAIMLERCHRYSLER FINANCIAL SERVICES AMERICAS LLC/CHRYSLER FINANCIAL/DCFS TRUST

**Categories of Information We Collect**
We collect nonpublic personal information about you from the following sources:

- Information we receive from you on applications and other forms;
- Information about your transactions with us, our affiliates, or others; and
- Information we receive from consumer reporting agencies and other outside sources.

**Categories of Information We Disclose**
We may disclose all of the information that we collect, as described above.

**Categories of Affiliates and Third Parties to Whom We Disclose Information About Current and Former Customers**
We may disclose all of the information that we collect, which relates to our transactions or experiences with you, among our affiliated companies. Companies which are affiliated with us include any company that controls us, any company we control, or any company under common control with us. In other words, it is any company that is in our "family of companies."

We may disclose all of the information that we collect, as described above, to companies that perform marketing services on our behalf or to other financial institutions with whom we have joint marketing agreements.

We may also disclose all of the information that we collect, as described above, with other nonaffiliated third parties as permitted by law.

**Opting Out of Disclosure**
Because we only disclose information to nonaffiliated third parties as permitted by law or through a joint marketing agreement, opt-outs of such disclosures are not required.

**Policies and Practices to Protect the Confidentiality and Security of Nonpublic Personal Information**
We restrict access to nonpublic personal information about you to those employees, outside contractors, and businesses which jointly market our products and services, who need or may need to know that information to provide products or services to you. We maintain physical, electronic, and procedural safeguards that comply with federal regulations to protect your nonpublic personal information.

**Privacy Policy Changes and Future Disclosures**
We may from time to time change our Privacy Policy. Therefore, we reserve the right to disclose any and all information to our affiliates and other nonaffiliated third parties as permitted by law.

## *Electronic Contracting and Signature Acknowledgment*

**THIS IS AN ELECTRONIC AGREEMENT.** By signing the electronic signature capture device or otherwise affixing an electronic signature or digital certificate to this contract, you agree to complete this transaction electronically and acknowledge the prior delivery of a paper copy containing the Federal Truth-in-Lending Act disclosures, other state disclosures, and terms of the contract. The authoritative copy of this contract ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by us for the storage of authoritative copies of electronic records. If the Authoritative Copy is later converted by printing a paper copy which is marked by us as the original (the "Paper Contract"), then you acknowledge and agree that: (1) your signing of this contract with your electronic signature or digital certificate also constitutes issuance and delivery of such Paper Contract; (2) your electronic signature/digital certificate associated with this contract, when affixed to or noted on the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract; and (3) subsequent to such conversion, your obligations will be evidenced by the Paper Contract alone. Upon affixing an electronic signature or digital certificate to this contract, you will complete a legally binding agreement, having the same effect as if you had signed this contract with pen and ink. Once you have completed the agreement, an additional paper copy will be printed and given to you, which includes the date of each electronic/digital certificate you affixed to this contract.

## NOTICE

**ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER. THIS NOTICE APPLIES ONLY IF THE GOODS AND SERVICES OBTAINED UNDER THIS CONTRACT WERE OBTAINED PRIMARILY FOR PERSONAL, FAMILY, OR HOUSEHOLD USE.**

## *Signatures*

**NOTICE TO THE BUYER(S):**

**1. DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. 2. YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THIS CONTRACT WHEN YOU SIGN IT. 3. UNDER THE LAW, YOU HAVE THE FOLLOWING RIGHTS, AMONG OTHERS: (A) TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND TO OBTAIN A PARTIAL REFUND OF THE CREDIT SERVICE CHARGE (FINANCE CHARGE); (B) TO REDEEM THE PROPERTY IF REPOSSESSED FOR DEFAULT; (C)TO REQUIRE, UNDER CERTAIN CONDITIONS, A RESALE OF THE PROPERTY IF REPOSSESSED. 4. ACCORDING TO LAW YOU HAVE THE PRIVILEGE OF PURCHASING THE INSURANCE ON THE MOTOR VEHICLE PROVIDED FOR IN THIS CONTRACT FROM AN AGENT OR BROKER OF YOUR OWN SELECTION.**

**BUYER ACKNOWLEDGES RECEIPT OF A TRUE AND COMPLETELY FILLED IN COPY OF THIS RETAIL INSTALLMENT CONTRACT. IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT, INCLUDING THE IMPORTANT ARBITRATION DISCLOSURES AND PRIVACY POLICY ON PAGES 5 AND 6 OF THIS CONTRACT.**

**RETAIL INSTALLMENT CONTRACT**

| [signature] 09/30/2008 | | |
|---|---|---|
| Buyer Signs | Company Name | Title |
| [signature] 09/30/2008 | | |
| Co-Buyer Signs | Company Name | Title |

**The Annual Percentage Rate may be negotiated with the Seller. The Seller may assign this contract and retain its rights to receive a part of the Finance Charge.**

## *Seller Signature and Assignment*

**THIS IS AN ELECTRONIC AGREEMENT.** Upon Seller affixing its electronic signature or digital certificate to this contract, the Seller accepts this contract and assigns it to DaimlerChrysler Financial Services Americas LLC ("Assignee") subject to the terms and conditions of the Retail Installment Contract and Lease Program Agreement between Seller and DaimlerChrysler Financial Services Americas LLC. Upon affixing an electronic signature or digital certificate to this contract, Seller will complete a legally binding agreement, having the same effect as if Seller had signed this contract with pen and ink, and warrant and represent that Buyer is purchasing the vehicle for Buyer's or Co-Buyer's use.

62c6f0eac9a495f531e77230b026215d s59965d 09/30/2008 15:23:57:656 MAYS, BILLIE JO

Seller Signature

1 64477 New York State Department of Motor Vehicles 00232 102808

# NOTICE OF RECORDED LIEN

| I.D. Number | Year | Make |
|---|---|---|
| 2A8HR54P28R804291 | 2008 | CHRYS |

| Wgt./Lgth. | Fuel | Cyl/Prop. | Body/Hull. | Color |
|---|---|---|---|---|
| 4399 | GAS | 6 | SUBN | BL |

DC FIN SVCS AMER LLC
PO BOX 997533
SACRAMENTO CA 95899

Owner: If you have moved and have not yet notified this Department of your new address, cross out the address shown and print your new address in its place.

**OWNER**

PRIORE,MARC,D
PRIORE,DEBORAH,A
38 VERMONT PL
WEST SENECA NY 14224

**ADDITIONAL LIENHOLDERS**

The following information applies only to the lienholder shown in the box above.

☐ Our security interest in the vehicle, boat or manufactured home described in this notice has been satisfied.

☐ We have assumed ownership of this vehicle, boat or manufactured home. We are transferring ownership to:

☐ We have assigned our security interest in this vehicle, boat or manufactured home to:

Lien Filing Code

Name Date of Assignment

No. and Street

City State Zip

Authorized Signature Date

If you are the owner named on this notice, you can keep this notice with the Certificate of Title and when you sell the vehicle, boat or manufactured home, give the transferred Title AND this notice to the new owner. To obtain a lien-free Title before then, return your current Title, this lien notice and a $20.00 fee to the DMV, Title Bureau, 6 Empire State Plaza, Albany NY 12228-0330. (Check or money order should be made payable to the Commissioner of Motor Vehicles.)

If you cannot locate the Title for the vehicle, boat or manufactured home, you must apply for a duplicate. You may apply for a duplicate by completing Form MV-902 (available at a DMV office or on our web site at www.nysdmv.com) and mailing it with a $20.00 check or money order AND this lien notice to the DMV, Title Bureau at the above address.

If your address has not changed since you last registered the vehicle and your registration shows your current address, you may be able to apply for a duplicate title on line. For more information, please visit our web site listed above.

MV-901 (1/06)